UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

RODNEY S. PAGE, II,                )
                                   )
    Plaintiff                      )
                                   )
v.                                 )    1:16-cv-00626-JDL
                                   )
NANCY A. BERRYHILL,                )
ACTING COMMISSIONER,               )
SOCIAL SECURITY ADMINISTRATION,    )
                                   )
    Defendant                      )

## REPORT AND RECOMMENDED DECISION

On Plaintiff Rodney Page's application for disability insurance benefits under Title II of the Social Security Act, Defendant, the Social Security Administration Acting Commissioner, found that Plaintiff has severe impairments, but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action for judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court vacate the administrative decision and remand for further proceedings.

## The Administrative Findings

The Commissioner's final decision is the September 25, 2015, decision of the Administrative Law Judge (ALJ). (ALJ Decision, ECF No. 10-2.)[1] The ALJ's decision

---

[1] Because the Appeals Council found no reason to review that decision, the Acting Commissioner's final

tracks the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. § 404.1520.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of degenerative disk disease, osteoarthritis, history of right shoulder osteoarthritis, bilateral carpal tunnel syndrome, bipolar disorder, anxiety, learning disability, and fibromyalgia. (ALJ Decision ¶¶ 4 – 5.) The ALJ further found that, despite his impairments, Plaintiff has the residual functional capacity (RFC) to perform a subset of medium exertion work, subject to several physical limitations, and is further limited to a subset of "simple" work that involves limited change in work settings and routines, does not require literacy, involves no more than 1 or 2 step instructions with few concrete variables that are communicated orally, does not involve working with the public, and does not involve more than occasional contact with coworkers and supervisors. (*Id.* ¶ 6.)

Based on the RFC finding and Plaintiff's vocational profile, and based on testimony of a vocational expert, the ALJ concluded that Plaintiff could perform substantial gainful activity, including in the representative occupations of launderer hand, industrial cleaner, housekeeping cleaner, and linen grader. (*Id.* ¶ 11.) Accordingly, the ALJ determined that Plaintiff has not been disabled for the period commencing with the alleged onset date, June 25, 2010, and ending on the date of decision, September 25, 2015. (*Id.* ¶ 12.)

## Standard of Review

A court must affirm the administrative decision provided the correct legal standards

---

decision is the ALJ decision.

were applied and provided the decision is supported by substantial evidence. This is so even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## Discussion

Plaintiff argues the ALJ's finding at step 3 – that he does not meet a mental impairment listing – is not supported by substantial evidence because the ALJ impermissibly "invalidated" the results of an IQ test. (Statement of Errors at 2 – 3.) Plaintiff also contends the ALJ erred when she did not address whether Plaintiff's impairment is medically equivalent to listing 12.05(C), even if it does not meet the listing. (*Id.* at 3 – 7.) In addition to challenging the step 3 finding, Plaintiff argues the ALJ's RFC finding is flawed because substantial evidence does not support the ALJ's assessment of Plaintiff's carpal tunnel syndrome, or the ALJ's finding that Plaintiff can perform substantial gainful activity at the medium-exertion level. (*Id.* at 8 – 20.)

**A.    Step 3**

Plaintiff argues that he qualifies as disabled at step 3 because his degree of impairment meets or equals listing 12.05(C). According to Plaintiff, the ALJ's contrary

finding is not supported by substantial evidence because the ALJ impermissibly judged matters entrusted to experts.

"The listings are so constructed that an individual with an impairment(s) that meets or is equivalent in severity to the criteria of a listing could not reasonably be expected to do any gainful activity." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A); *see also* 20 C.F.R. § 404.1525(a). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). However, if a claimant has an impairment identified in a listing, but does not meet one or more of the criteria of the listing, the claimant may still be found disabled at step 3 if he has "other findings related to [his] impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. § 404.1526(b)(1)(ii) (defining "medical equivalence").

Prior to amendments effective January 17, 2017,[2] and for purposes of Plaintiff's claim, the relevant listing language provided:

> The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing. Paragraphs A and B contain criteria that describe disorders we consider severe enough to prevent your doing any gainful activity without any additional assessment of functional limitations.

---

[2] The Social Security Administration revised the Listing regulations regarding mental disorders effective January 17, 2017, to reflect, inter alia, "advances in medical knowledge." Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66138 (Sept. 26, 2016). The ALJ did not apply, and the parties have not discussed, the current language of the Listing. The version of the Listing in effect on the date of the ALJ's decision governs. *See id.* n.1 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c). If the additional impairment(s) does not cause limitations that are "severe" as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function," even if you are unable to do your past work because of the unique features of that work. …

…. When you have a medically determinable severe mental impairment that does not satisfy the diagnostic description or the requirements of the paragraph A criteria of the relevant listing, the assessment of the paragraph B and C criteria is critical to a determination of equivalence.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A).

The listing on which Plaintiff relies, Listing 12.05(C), reads as follows:

12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

…

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function ….

The ALJ found that Plaintiff did not meet the listing because Plaintiff "does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." (ALJ Decision, ¶ 5, R. 23.)

One of the IQ tests that is central to the parties' dispute is the test associated with

5

the "clinical interview" conducted by Edward Quinn, Ph.D., on October 24, 2010. (ECF No. 10-7, Ex. 4F.) Dr. Quinn administered the Wechsler Adult Intelligence Scale – Fourth Edition, and reported that Plaintiff's scores "appear[ed] to reflect his current level of functioning." Among the scores were a verbal comprehension index in the "extremely low range," reported as "VCI = 66; 95% confidence interval = 62 – 73," and a working memory index in the "extremely low range," reported as "WMI = 66; 95% confidence interval 61 – 75." (R. 569 – 570.) Dr. Quinn also reported a perceptual reasoning (performance) score of 96. (R. 569.)

In addition to the testing performed by Dr. Quinn, the record contains subsequent test results reported by Jonathan Siegel, Ph.D., who administered the WAIS-IV on November 21, 2011. (ECF No. 10-7, Ex. 18F.) Dr. Siegel reported that Plaintiff scored a verbal comprehension index of 76, and a working memory index of 63. (R. 730.) Dr. Siegel also reported a perceptual reasoning index of 92. (*Id.*) Based on these and other scores, Dr. Siegel assessed a full-scale IQ of 75, with a 95% chance that the full-scale IQ falls in the range of 71 – 80. (*Id.*)

On December 15, 2011, Maine Disability Determination Services conducted a case analysis that included consideration of the findings of Dr. Siegel. (ECF No. 10-3, Ex. 6A.) The analysis, endorsed by Brian Stahl, Ph.D., suggests that listing 12.05 was not implicated by Dr. Siegel's findings, and that Plaintiff's mental impairments were assessed only in terms of the listings for organic mental disorders, affective disorders, and anxiety-related disorders. (R. 135 – 136.) Dr. Stahl, however, noted that the evidence of record supported a finding of borderline intellectual functioning and that Plaintiff's "[c]onditions do not

meet or equal a listing." (*Id.*) Similarly, upon reconsideration, Disability Determination Services, in a determination endorsed by Peter Allen, Ph.D., did not consider listing 12.05, identified borderline intellectual functioning as an impairment, and based the determination on a residual functional capacity for a subset of simple work. Neither of the determinations entered by Disability Determination Services acknowledged Dr. Quinn's 2010 IQ testing.

The ALJ considered at step 3 whether Plaintiff could be found disabled based on listing 12.05. Unlike the Disability Determination Services consulting physicians, the ALJ considered the weight to be given to Dr. Quinn's 2010 report of IQ test results. The ALJ concluded that the 66 verbal comprehensive index score reported by Dr. Quinn was invalid for the following reasons: (1) Plaintiff achieved a score of 76 on that same index when tested by Dr. Siegel; (2) Dr. Quinn had not been able to report a full scale IQ score; and (3) Plaintiff had significantly higher scores in other tested areas, and had demonstrated an ability to perform "such complex tasks as scuba diving, driving, carpentry, house building, and auto repair." (ALJ Decision ¶ 5, R. 23.)

According to Plaintiff, "[g]iven the conflict …, the ALJ's decision to invalidate one set of scores is not supported by substantial evidence [and] [t]he matter should be remanded for testimony of a medical expert as to whether the Plaintiff's conditions meet or equal Listing 12.05(C)." (Statement of Errors at 3, citing the decision in *Plourde v. Barnhart*, No. 1:02-cv-164-JAW, 2003 WL 22466176 (D. Me. Nov. 18, 2003)). Plaintiff argues that the ALJ impermissibly judged matters entrusted to experts and that she did not discuss whether Plaintiff's impairments, in combination, equal the listing. (Statement of Errors 4

– 5.) Defendant maintains the ALJ properly performed her obligation to reconcile conflicting expert opinion evidence and permissibly relied on the IQ test results reported by Dr. Siegel. (Response at 3 – 4.)

The ALJ must resolve conflicts in the evidence, including conflicts as to a plaintiff's intellectual functioning. *Libby v. Astrue*, No. 2:10-cv-00292-JAW, 2011 WL 2940738, at *4 (D. Me. July 19, 2011). Here, the ALJ determined that Dr. Siegel's report of IQ indices based on the WAIS-IV were the most reliable indicator of Plaintiff's intellectual functioning. To support his claim of error, Plaintiff relies on the verbal index of 66 reported by Dr. Quinn.

The ALJ's decision not to rely on the index of 66 is supported by substantial evidence because Dr. Quinn reported a range of likely accurate measures, which range included a score as high as 73 and, because Plaintiff, when later tested by Dr. Siegel, achieved an index of 76. Furthermore, as to Plaintiff's medical equivalency argument, Plaintiff's performance on the WAIS-IV administered by Dr. Siegel supports the finding that Plaintiff's IQ is above 70 in all of the indices relevant to listing 12.05(C). Evidently based on the findings, the Disability Determination Services consulting physicians ruled out listing 12.05. The ALJ expressly found that "the severity of [Plaintiff's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.02, 12.04, 12.05, and 12.06." (R. 21.) The ALJ's findings regarding Plaintiff's ability to engage in relatively involved activities such as scuba diving, home construction, and auto repair, establish that a remand for the ALJ to discuss medical equivalency is unnecessary. Plaintiff's ability to engage in such activities on an

independent basis is the kind of evidence a reasonable person could accept as adequate to support the finding that Plaintiff's impairments are not the functional equivalent of the impairment described in the listing.[3]

## B.  RFC Assessment

Plaintiff also argues the ALJ's RFC assessment is not supported by substantial evidence because the ALJ relied significantly on the opinion of Donald Trumbull, M.D., the consultative expert record reviewer, who did not review material new findings by consultative examiner David Axelman, M.D.  According to Plaintiff, with the new findings, expressed approximately four years after Dr. Trumbull's assessment, the ALJ could not properly rely on Dr. Trumbull's assessment. (Statement of Errors at 7 – 11.)  Finally, Plaintiff contends that in the ALJ's attempt to assess the new evidence, the ALJ impermissibly judged matters entrusted to experts.  (*Id.* at 12 – 14.)

The record reveals that Plaintiff has, in addition to various musculoskeletal impairments, longstanding carpal tunnel syndrome, as described in a medical history provided by Dr. Axelman.  (Oct. 27, 2011, Consultative Examination Report at 2, Ex. 17F.) In his 2011 report, Dr. Axelman noted the absence of nerve conduction studies, but credited a report of "difficulty with some fine motor skills" based on "positive Tinel and Phalen's sign[s]" and notable swelling in the interphalangeal joints.  (*Id.* at 2 – 3.)  Dr. Axelman

---

[3] Although Plaintiff relies on it as persuasive precedent, *Plourde v. Barnhart* is not inconsistent with this recommendation.  In *Plourde*, the Court remanded for further proceedings to address whether the claimant's condition met or equaled listing 12.05(C), where one report of IQ testing included indices within the relevant range, but another report of IQ testing did not.  Rather than choosing the expert report with the higher test results, the ALJ simply concluded that the record could not "definitively" show a valid IQ in the required range.  In other words, the ALJ did not adopt the test results that reflect the claimant's IQ indices were above 70.  2003 WL 22466176, at *3.

9

assessed "[c]arpal tunnel syndrome which should be evaluated, with numbness and relatively decreased grip and fine motor skills." (*Id.* at 4.)

On December 15, 2011, without the benefit of a further evaluation, Dr. Trumbull opined that Plaintiff has severe carpal tunnel syndrome. (Ex. 6A, R. 134.) In his RFC assessment, however, Dr. Trumbull described only manipulative limitations associated with a right shoulder impairment, and reported that Plaintiff has an "unlimited" ability to use his hands. (Ex. 6A, R. 137.) Dr. Trumbull apparently concluded that the carpal tunnel syndrome was a factor that limited Plaintiff to medium exertion. On reconsideration, dated May 7, 2012, J.H. Hall, MD, agreed with Dr. Trumbull's assessment. (Ex. 7A, R. 147, 150.)

On June 30, 2015, Dr. Axelman conducted another physical examination of Plaintiff. (Ex. 33F.) Concerning carpal tunnel syndrome, Dr. Axelman noted nerve conduction studies performed in August 2013, "showing moderate carpal tunnel bilaterally and focal ulnar neuropathy bilaterally with activity" that had "somewhat worsened with constant numbness and decreased grip." (R. 836.) Dr. Axelman found 5/5 strength in the grip, difficulty opposing the thumbs to the fingers, poor manual dexterity, and interphalangeal swelling. (R. 838.) Dr. Axelman also assessed osteoarthritis in the hands and poor fine motor skills, but noted that surgery had not been recommended. (R. 838.) In addition, Dr. Axelman found Plaintiff could carry a significant amount of weight for short durations, but had "quite diminished" fine motor skills. (R. 839.)

Dr. Axelman provided an assessment of Plaintiff's RFC through a medical source statement. (Ex. 33F, R. 840.) In Dr. Axelman's view, Plaintiff is precluded from lifting

weight greater than 20 pounds. (*Id.* at 6, R. 840.) The assessment is inconsistent with a finding that Plaintiff can perform "medium work," which can include lifting as much as 50 pounds and frequent lifting of weights as high as 25 pounds. 20 C.F.R. § 416.967(c). On August 30, 2013, Peter Arabadjis, M.D., reported that the results of an electrodiagnostic study were abnormal. (Ex. 31F, R. 831-32.) Additionally, Dr. Axelman assessed a limitation to occasional use of hands. (R. 842.) No expert who has provided an opinion on Plaintiff's RFC, other than Dr. Axelman, has considered the more recent findings associated with Plaintiff's carpal tunnel syndrome.

The ALJ found that carpal tunnel syndrome was among Plaintiff's severe physical impairments. (ALJ Decision ¶ 4, R. 18 – 19.) The ALJ determined that the limitations imposed by carpal tunnel syndrome limit Plaintiff to "frequent" handling, fingering, feeling, and use of hand tools. A limitation to "frequent" is in essence a finding that Plaintiff can engage in work that requires handling, fingering, feeling, and the use of hand tools as often as 2/3 of the time. Titles II & XVI: Determining Capability to Do Other Work — the Medical-Vocational Rules of Appendix 2, SSR 83-10 (S.S.A. 1983) ("'Frequent' means occurring from one-third to two-thirds of the time."). Because none of the consulting experts who found Plaintiff to have the same or greater residual RFC considered the more recent findings associated with Plaintiff's carpal tunnel syndrome, without further expert evidence, the ALJ's assessment that Plaintiff can engage in frequent use of his hands and perform medium work is not supported by substantial evidence.[4]

---

[4] In the absence of the more recent evidence, including the nerve conduction study, the consultative experts all assessed Plaintiff as "unlimited" with respect to the use of his hands. The ALJ's finding implicitly

11

Because the ALJ independently judged matters entrusted to experts, the ALJ's findings are not conclusive. *Nguyen*, 172 F.3d at 35.

The failure to obtain further expert evidence before determining whether Plaintiff is disabled was not harmless error. The record expert evidence suggests a potential disability finding if the ALJ found that Plaintiff could only occasionally use his hands for handling, feeling and using tools:

> Q: Dr. Mitsilovich, on the second hypothetical, if it was limited to occasional use of the right and left hand in reaching, fingering, handling, feeling, and pushing and pulling, what impact would that have if that was added to the second hypothetical?
>
> A: None of the jobs that I provided could be performed.

(ECF No. 10-2, R. 119.) Furthermore, due to Plaintiff's age, the Medical-Vocational Guidelines would direct a finding of disabled if Plaintiff is limited to light exertion. Medical-Vocational Guidelines, Appendix 2 to 20 C.F.R. Part 404, Subpart P, § 202.00.

The source statement and studies generated after the consultative experts' opinions are not consistent with a finding that Plaintiff can perform medium work. Accordingly, remand is appropriate to obtain an expert assessment.

---

acknowledges that such an assessment is not consistent with the record. (R. 27: "I generally give great weight to the state agency consultants …, with some modification to account for the claimant's upper extremity conditions …. I have added to their upper extremity limitations to account for the claimant's CTS …." (citing inter alia, Peter Arabadjis, M.D.'s electrodiagnostic report, Ex. 31F).) Defendant's alternative argument that the ALJ's finding on these issues is the product of "common sense" is not persuasive. (Response at 9.) Although this case involves an alleged error in the RFC finding rather than at step 2, this case is similar to *Bernier v. Colvin*, No. 2:14-cv-178-JHR, 2015 WL 1780148, at *3 (D. Me. Apr. 17, 2015), in which the Court found that the ALJ could not independently assess the significance of an EMG test report describing "mild" carpal tunnel syndrome on a common sense basis.

## CONCLUSION

Based on the foregoing analysis, I recommend that the Court vacate the administrative decision and remand for further proceedings.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 7th day of November, 2017.